UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JULIE ANNE SUETKAMP, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:18-CV-562 JD |
| | ) |
| ANDREW M. SAUL, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Julie Suetkamp ("Ms. Suetkamp") appeals the denial of her application for social security disability insurance benefits. For the following reasons, the Court will remand this matter to the Commissioner for further proceedings consistent with this opinion.

### I. BACKGROUND

Ms. Suetkamp filed an application for disability insurance benefits on November 3, 2014, alleging disability beginning on February 1, 2012. Ms. Suetkamp suffers from various severe impairments including acute pancreatitis, headaches, compression fracture of the T12 vertebrae body, chiari malformation,[1] and major depressive disorder. Ms. Suetkamp has also been diagnosed with anxiety, insomnia, and dysthymic disorder.

Most significant, for purposes of this discussion, is the limitations caused by Ms. Suetkamp's acute pancreatitis. Medical records demonstrate that Ms. Suetkamp has suffered from chronic pancreatitis since at least 2001. After undergoing pancreatobiliary sphincterotomies

---

[1] Chiari malformation is a condition in which brain tissue extends into your spinal canal with headaches being one of the classic symptoms. https://www.mayoclinic.org/diseases-conditions/chiari-malformation/symptoms-causes/syc-20354010 (last visited August 23, 2019).

and abdominal injections/blocks, Ms. Suetkamp still required Percocet, Vicodin, and increasing doses of Fentanyl from 2002 to 2006 to keep her pain stable. From 2006 to 2010, it was reported that Ms. Suetkamp went to the emergency room about once every year for four days each time due to increased abdominal pain. In May 2010, Ms. Suetkamp began reporting intensified pain, and by September 2011, she had a nerve stimulator inserted in order to help control it. By June 2012, it was reported that while Ms. Suetkamp was managing her pain with the nerve stimulator, she could not get her nausea under control. Medical records reveal that despite Ms. Suetkamp's desire to "avoid hospitalization," she was hospitalized at least four times in 2013, two times in 2014, and one time in 2016 on account of her acute pancreatitis marked by severe abdominal pain and sustained vomiting.

On December 22, 2014, the examining state agent, Dr. Gupta, documented that Ms. Suetkamp had recently lost her insurance and was unable to afford all of her treatment. It was noted that Ms. Suetkamp presented with headaches, abdominal pain, nausea, and vomiting. Dr. Gupta opined that Ms. Suetkamp suffered from a history of headaches, chiari malformation, and chronic pancreatitis since 1999. Dr. Gupta did not assess Ms. Suetkamp's functional limitations or ability to work. Thereafter, reviewing state agents opined on December 31, 2014 and February 25, 2015, that Ms. Suetkamp was capable of performing medium exertional work despite her ailments.

On February 20, 2015, treating physician Dr. Glen Lehman wrote a letter indicating that at the time he last treated Ms. Suetkamp in 2012, she suffered from chronic pancreatitis which required daily narcotics and nausea medication. He noted that her pain was aggravated by most physical activities and that she was unable to walk/stand for more than fifteen or twenty minutes. Dr. Lehman opined that her condition often necessitates being hospitalized for three to ten days,

missing work for five days per month, and taking numerous daily breaks to manage the symptoms.

On May 22, 2017, Administrative Law Judge Lovert Bassett ("ALJ") held a hearing during which Ms. Suetkamp, an impartial medical expert ("ME"), and a vocational expert ("VE") testified. Ms. Suetkamp testified that she stopped working as an office assistant in 2012 because she was missing too much work as a result of her pancreatic flare-ups and chronic pain. Despite being on pain and nausea medication, approximately every few months Ms. Suetkamp's breakthrough pain and uncontrollable vomiting lands her in the emergency room. In addition, at least twice a month she suffers from pancreatic flare-ups which involve severe stabbing pain, vomiting, and loss of focus for three to seven days, but she avoids going to the emergency room because she does not have insurance. Ms. Suetkamp's bad days are unpredictable but seem to be aggravated by too much activity and eating food that doesn't agree with her body. Her typical day involves mostly laying down and trying to do a little cleaning with long hourly breaks.[2] Her specialist is considering whether Ms. Suetkamp should have a feeding tube inserted in order to relieve some of the pain.

During the administrative hearing, the ME indicated that based on his review of the medical record, he believed that Ms. Suetkamp suffered from a history of "chronic" recurrent/relapsing pancreatitis "more prevalent and more symptomatic in 2012 and 2013, [and] presumably more chronic right now at this time." R. at 44-50. By the term "chronic," the ME meant that Ms. Suetkamp's severe episodes occur from "a few to six times a year," with intermittent acute processes likely requiring hospital admissions. While the ME opined that Ms.

---

[2] This testimony was consistent with Ms. Suetkamp's function report from December 2014, wherein Ms. Suetkamp indicated that she does some "light house" work, but that this activity "puts [her] down for a while." R. at 227, 229, 237, 239.

Suetkamp was physically capable of performing the demands of light work, he also agreed that when Ms. Suetkamp suffers from a flare-up it would be difficult for her to complete tasks and focus. The ME also admitted that Ms. Suetkamp's medical records and testimony supported her having flare-ups every several months and suffering from severe pain even when she doesn't go to the emergency room. Also, during the hearing, the VE testified that if Ms. Suetkamp missed more than ten days of work per year or was off-task more than ten percent of the workday, then she could not maintain competitive employment.

Despite this evidence, the ALJ concluded that Ms. Suetkamp was capable of performing light work (with other exertional limitations and the ability to understand, remember, and carry-out detailed instructions). This finding meant that Ms. Suetkamp could perform her past work as an administrative clerk, per the VE's testimony. Given this determination, the ALJ denied Ms. Suetkamp's claim for disability benefits. Once the Appeals Council denied her request for review, the ALJ's decision became the final determination of the Commissioner. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). Ms. Suetkamp seeks review of the Commissioner's decision, thereby invoking this Court's jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.     STANDARD OF REVIEW

This Court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Thus, even if "reasonable minds could differ" about

the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

In this substantial-evidence determination, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to the ALJ's findings. *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). Consequently, an ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez*, 336 F.3d at 539. Ultimately, while the ALJ is not required to address every piece of evidence or testimony presented, the ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

### III. DISCUSSION

Disability benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step evaluation to determine whether the claimant has established a disability. 20 C.F.R. § 404.1520(a)(4)(i)-(v). In order, these steps are:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

4. Whether the claimant can still perform relevant past work; and

5. Whether the claimant can perform other work in the community.

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). At step three, if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations, the Commissioner finds a disability. 20 C.F.R. § 404.1520(a)(4)(iii). However, if no listing is met or equaled, then between steps three and four, the ALJ must assess the claimant's RFC, which is used in turn to determine whether the claimant can perform her past work under step four and whether the claimant can perform other work in society at step five of the analysis. 20 C.F.R. § 404.1520(e). The claimant has the initial burden of proof in steps one through four, while the burden shifts to the Commissioner in step five to show that there are a significant number of jobs in the national economy that the claimant is capable of performing. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

Ms. Suetkamp argues, among other things, that the ALJ's RFC assessment is not supported by substantial evidence where the ALJ did not adequately account for the time that she would miss work and remain off-task as result of her pancreatic flare-ups. For the reasons expressed below, the Court will remand this matter to the Commissioner due to the ALJ's failure to support Ms. Suetkamp's assigned RFC with substantial evidence and will invite the ALJ to address Ms. Suetkamp's remaining contentions on remand, including whether her mental disorders cause further limitations.

The ALJ must determine an individual's RFC, meaning "what an individual can still do despite his or her limitations," SSR 96–8p, based upon medical evidence as well as other evidence, such as testimony by the claimant. *Murphy v. Colvin,* 759 F.3d 811, 817 (7th Cir. 2014) (citation omitted). In making a proper RFC determination, the ALJ must consider all of the relevant evidence in the record, even as to limitations that are not severe. *Id*.; *see* 20 C.F.R. § 404.1529(a) (in making a disability determination, the ALJ must consider all of a claimant's symptoms, including pain, and how those symptoms affect a claimant's daily life and ability to work). The ALJ must then build "an accurate and logical bridge from the evidence to the conclusion" so that a court can assess the validity of the agency's decision and afford the claimant meaningful review. *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007).

The ALJ in this case concluded that Ms. Suetkamp had the RFC to perform a limited range of light work, including the lifting/carrying of no more than twenty pounds, with frequent lifting/carrying of objects weighing up to ten pounds. 20 C.F.R. § 404.1567(b); SSR 83-10. The ALJ opined that Ms. Suetkamp could also sit for six hours and stand/walk for four hours in a workday while handling detailed instructions. In making his RFC determination, the ALJ gave "enormous weight" to the opinion of the ME who assessed Ms. Suetkamp's work-related functional limitations.

The problem with the ALJ's reliance on the ME's opinion was the ALJ's failure to recognize the additional limitations that the ME acknowledged *after* testifying that Ms. Suetkamp was able to perform light work. As an example, the ALJ adopted the ME's belief that "the intensity of emergency room visits decreased" after 2013, but then the ALJ failed to acknowledge the ME's additional testimony that Ms. Suetkamp's flare-ups (even if not requiring a visit to the emergency room) would still occur from a few to six times a year (or, every two to

three months). The ME indicated that even when a flare-up did not require hospitalization, Ms. Suetkamp's medical history and testimony supported that she would still suffer for days at a time with severe pain, thereby rendering her unable to complete tasks or focus—testimony which the ALJ seemingly ignored. When Ms. Suetkamp's flare-ups do require hospitalization, she is typically admitted for at least four days and as many as nine days. R. at 565, 695, 825, 907, 989, 1033, 1211, 1911. Yet, the ALJ's explanation does not account for this evidence which demonstrates that Ms. Suetkamp regularly suffered from significant limitations caused by her unpredictable pancreatic flare-ups marked by pain and nausea that would cause her to be off-task for several days or miss work altogether. Thus, given the VE's testimony that one could not miss more than ten days of work per year or be off-task more than ten percent of the workday, the ALJ's omitting discussion of this evidence favoring Ms. Suetkamp indicates that the RFC assessment is not supported by an adequate discussion of the actual evidence.[3]

The ALJ's placing of "good weight" on the opinions of the state agents does not bridge this evidentiary gap. The state agents opined that Ms. Suetkamp could perform fulltime medium work that was not limited to unskilled tasks. But these records do not reflect their consideration of the ME's testimony or Dr. Lehman's treating physician opinion. Even the ME believed that Ms. Suetkamp's chronic recurrent/relapsing pancreatitis, which was "most symptomatic in 2012 and 2013," had recently become "more chronic" (which would have been within the coverage period). In fact, Ms. Suetkamp's specialist is considering inserting a feeding tube in order to relieve some of Ms. Suetkamp's pain and allow her pancreas to rest. As for Dr. Lehman, his letter indicated that Ms. Suetkamp would likely miss any type of work for five days every month,

---

[3] In fact, after the alleged onset date, it appears that Ms. Suetkamp was hospitalized for roughly twenty-nine days in 2013 alone.

and that while at work she would require many breaks.[4] Thus, the state agents' opinions were rendered without consideration of evidence demonstrating the severity (and worsening) of her condition. *See Moreno v. Berryhill,* 882 F.3d 722, 728 (7th Cir. 2018), as amended on reh'g (Apr. 13, 2018) (noting that an ALJ should not rely on an outdated assessment if later evidence containing new, significant medical diagnoses reasonably could have changed the physician's opinion) (citing *Staggs v. Astrue*, 781 F.Supp.2d 790, 794–96 (S.D. Ind. 2011) (finding that the medical record omitted from review provided "significant substantive evidence" regarding the claimant's medical impairments and that any medical opinion rendered without taking this record into consideration was "incomplete and ineffective.")).

In sum, the ALJ's decision does not contain the requisite logical bridge from the evidence to the RFC conclusion where the ALJ selectively cited evidence that supported his conclusion while ignoring evidence supporting Ms. Suetkamp's claim. *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding."). The ALJ's decision concludes without adequate explanation that Ms. Suetkamp can perform fulltime light work involving detailed instructions and no additional breaks.[5] This error requires reversal, as the VE's testimony addressed the RFC that the

---

[4] And although the ALJ seemingly discounted Dr. Lehman's opinion and Ms. Suetkamp's complained-of limitations because she didn't frequent the hospital more than once a year (on average) after 2013, the ALJ did so without setting forth how Ms. Suetkamp's loss of insurance and inability to afford treatment was considered. *See Myles v. Astrue,* 582 F.3d 672, 677 (7th Cir. 2009) (stating that the ALJ was required by Social Security Rulings to consider explanations for instances where the plaintiff did not pursue treatment); SSR 16-3p.

[5] The Court further cautions the ALJ against placing undue weight on a claimant's household activities in assessing her ability to work outside the home especially without considering how those activities are performed. *See Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006) (reasoning that the pressures, the nature of the work, flexibility in the use of time, and other

9

ALJ adopted, and there is no evidence of whether any jobs would be available if the ALJ adopted additional limitations. Accordingly, the Court must remand this matter to the Commissioner for further proceedings. On remand, the parties may also address Ms. Suetkamp's remaining arguments, including whether her mental impairments further limit her ability to work.

## IV. CONCLUSION

The remedy for the ALJ's shortcomings is further consideration, not the immediate award of benefits. For the reasons stated above, the Court REVERSES the Commissioner's decision and REMANDS this matter to the Commissioner for further proceedings consistent with this opinion. The Clerk is DIRECTED to prepare a judgment for the Court's approval. *See Cooke v. Jackson Nat'l Life Ins. Co.*, 882 F.3d 630, 631 (7th Cir. 2018).

SO ORDERED.

ENTERED: August 27, 2019

                                            /s/ JON E. DEGUILIO
                                            Judge
                                            United States District Court

---

aspects of the working environment as well, often differ dramatically between home and office or factory or other place of paid work). For instance, the ALJ discounted Ms. Suetkamp's alleged limitations in part based on her ability to do light cleaning, laundry, and shopping. However, other evidence demonstrated that even a little cleaning required Ms. Suetkamp to take long hourly breaks and that too much activity was known to provoke a flare-up. *See Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013) (noting that a person's ability to perform daily activities, especially if that can be done only with significant limitations, does not necessarily translate into an ability to work fulltime).